UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 10-40362-HRT |
| MELISSA M. MOUNT | ) | |
| XXX-XX-4584 | ) | Chapter 11 |
| and | ) | |
| | ) | |
| GREG T. MOUNT | ) | |
| XXX-XX-6884 | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| PROFESSIONAL SEARCH & | ) | Case No. 11-11237 |
| PLACEMENT, LLC d/b/a | ) | |
| COOL HAUS WORKS, LLC | ) | |
| | ) | |
| EIN: 20-5928056 | ) | **Jointly Administered** |
| | ) | **Under Case No. 10-40362 - HRT** |
| Debtor. | ) | |

**AMENDED DISCLOSURE STATEMENT TO JOINT PLAN OF REORGANIZATION
DATED MAY 20, 2011**

**INTRODUCTION**

This Disclosure Statement ("Disclosure Statement") has been prepared by Melissa M. Mount
and Greg T. Mount ("Mount"), and Professional Search & Placement, LLC d/b/a Cool Haus Works,
LLC ("Professional Search", and together with Mount, the "Debtors") to accompany their Joint
Chapter 11 Plan of Reorganization dated May 20, 2011 (the "Plan") which has been filed in the
Debtors' Chapter 11 cases. This Disclosure Statement is being provided to all creditors and interest
holders of the Debtors. This Disclosure Statement is subject to final approval pursuant to 11 U.S.C.
Section 1125 by the United States Bankruptcy Court for the District of Colorado as containing
adequate information to enable creditors and interest holders to determine whether to accept the
Debtors' Plan. The Court's approval of this Disclosure Statement does not constitute a decision on
the merits of the Debtors' Plan. Issues related to the merits of the Plan and its confirmation will be

the subject of a confirmation hearing, which is scheduled for _____**DAY, _____,**
**2011 at __:__0 __.m. in Courtroom C203, at the Byron G. Rogers U.S. Court House, 1929**
**Stout Street, Denver, Colorado.**

**MOUNT HEREBY GIVE NOTICE THAT THEY INTEND TO SEEK COURT APPROVAL TO CLOSE THEIR BANKRUPTCY CASE PRIOR TO ENTRY OF DISCHARGE.  MOUNT ANTICIPATES REOPENING THEIR CASE FOR GRANT OF DISCHARGE FIVE YEARS AFTER THE EFFECTIVE DATE OF THE PLAN.**

**THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION.   THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT.**

The Plan of Reorganization is the governing document or contract with creditors once it is confirmed by the Court.  In the event of any inconsistencies between the Plan and this Disclosure Statement, the Plan supersedes the Disclosure Statement and will be the sole Court approved document that governs the post-confirmation relationship and agreements between the parties.

This Disclosure Statement is provided to you along with a copy of the Debtors' Plan and a Ballot to be used for voting on the Plan.  Please complete the Ballot according to the instructions contained on the Ballot if you intend to vote for or against the Debtors' Plan.  Each creditor or interest holder may vote on the Plan by completing the enclosed Ballot and returning it to counsel for the Debtors:

> Aaron A. Garber, Esq.
> Kutner Miller Brinen, P.C.
> 303 East 17th Avenue
> Suite 500
> Denver, CO 80203

This Ballot must be received by the appropriate counsel designated above by no later than
_____**, 2011**, which date has been set by the Court as the last day to vote on the Plan.  Terms contained in this Disclosure Statement, which are defined in the Plan, have the same meaning as set forth in the definitional section of the Plan, Article II.  **WARNING: IF YOU ARE A CREDITOR**

**YOUR RIGHTS MAY BE IMPAIRED BY THE PLAN.**

**Recommendation**. As discussed more fully below, the Debtors firmly believe that the Plan represents the best alternative for providing the maximum value and quickest recovery for creditors. The Plan proposes a payment to unsecured creditors over time through the Debtors' earnings to achieve the maximum recovery for their creditors. **Again, the Debtors strongly believe that confirmation of the Plan is in the best interests of creditors and recommend that all creditors entitled to vote on the Plan vote to accept the Plan.**

**Voting Requirements.** Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan. Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting.

**Voting Classes**. Each holder of an Allowed Claim in Classes 2, 3, and E shall be entitled to vote to accept or reject the Plan.

**Deemed Acceptance of Plan**. The Plan treats Classes 1, 4, A, B, C, D, and F as unimpaired. Unimpaired classes are conclusively presumed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

**Deemed Rejection of Plan**. The Plan does not provide for any Class of creditors that shall receive and retain nothing under the Plan. Classes that receive and retain nothing under the Plan are deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

**One Vote Per Holder.** If a holder of a Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

## OVERVIEW OF THE PLAN

Professional Search is a job placement firm located in Littleton, Colorado. Mount owns

Professional Search. The Plan provides for the reorganization of the Debtors' financial affairs under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtors will continue in their business operations and careers to fund the Plan.

## CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 of the United States Bankruptcy Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals. Chapter 11 allows the Debtors to retain their assets during administration of their Chapter 11 case as Debtors-in-Possession and following confirmation of a Plan as reorganized Debtors or as provided in the Plan. Once confirmation of a Plan of Reorganization is approved by the Court, the Plan of Reorganization is the permanent restructuring of the Debtors' financial obligations. The Plan also provides a means through which the Debtors will restructure or repay their obligations. The Plan will provide the Debtors with an opportunity to restructure their debt while continuing in their business operations that will be used to finance the Plan.

The Plan of Reorganization divides creditors into classes of similarly situated creditors. All creditors of the same Class are treated in a similar fashion. All member Interests are also classified and treated alike. Each Class of creditors or interest holders is either impaired or unimpaired under the Plan. A Class is unimpaired if the Plan leaves unaltered the legal, equitable and contractual rights to which each creditor in the class is entitled. Alternatively, a claimant is unimpaired if the Plan provides for the cure of a default and reinstatement of the maturity date of the claim as it existed prior to the default.

The Bankruptcy Court set a bar date establishing April 11, 2011 as the last date for filing Proofs of Claim. The Plan provides that Claims and Interests of all Classes shall be allowed only if evidenced by a timely filed Proof of Claim or Interest or which otherwise appear in the Schedules filed by the Debtors and are not scheduled as disputed, contingent or unliquidated unless subsequently allowed by the Court. Creditors may check as to whether or not their claims have been scheduled as disputed, contingent or unliquidated by reviewing the Schedules filed by the Debtors in the Bankruptcy Court for the District of Colorado. Alternatively, creditors may contact counsel for the Debtors directly in order to determine how they have been scheduled.

Chapter 11 does not require that each holder of a Claim against or Interest in the Debtors to

4

vote in favor of the Plan in order for the Court to confirm the Plan.  The Plan, however, must be accepted by at least one impaired Class of Claims by a majority in number and two thirds in amount, without including insider acceptance, of those Claims of such Class actually voting on the Plan. Assuming one impaired Class votes to accept the Plan, it may be confirmed over its rejection by other Classes if the Court finds that the Plan does not discriminate unfairly and is fair and equitable, with respect to each Class of Claims or Interests that is impaired under and has not accepted the Plan.

The Bankruptcy Code requires that if interest holders retain an interest or receive anything under the Plan, then the unsecured creditor classes must either be paid the full value of their claims or vote to accept the Plan.  Since the Debtors believe that the Plan provides the best alternative for creditors, all creditors are urged to vote to accept the Plan.

If all Classes of Claims and Interests vote to accept the Plan, the Court may confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation.  Among other things, Section 1129 requires that the Plan be in the best interest of the holders of Claims and Interests and be feasible through a showing that confirmation will not be followed by the need for further financial reorganization of the Debtors.

## BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING

Several years ago Mount relocated to Denver, Colorado. Mount decided to invest in a business. Based upon Ms. Mount's background, Mount decided to purchase an intellectual property staffing company.  In November, 2006, Mount formed an entity called Innovative Management Group, LLC ("IMG") for the purpose of acquiring the staffing company.  IMG entered into a U.S. Small Business Administration Note (the "Note") through J.P. Morgan Chase Bank, NA. ("Chase") in the original principal amount of $617,500.00 for the purpose of acquiring the company.  On  June 29, 2007, IMG purchased Professional Search and Placement, Inc. On August 1, 2007, IMG filed with the Colorado Secretary of State articles of amendment changing IMG's name to Professional Search and Placement, LLC and IMG was dissolved in or around August, 2007.   On August 1, 2007, Professional Search and Placement, LLC intended to file an amendment with the Colorado Secretary of State indicating it would be doing business as CoolHaus Works, LLC.  Professional

5

Search and Placement, LLC inadvertently filed an amendment with the Colorado Secretary of State changing its name to CoolHaus Works, LLC.  Professional Search and Placement, LLC has at all times acted under the belief its was operating as Professional Search and Placement, LLC d/b/a/ CoolHaus Works, LLC, including filing tax returns, issuing pay checks, and completing business related forms.  In June, 2011, Professional Search and Placement, LLC learned it had inadvertently filed an amendment with the Colorado Secretary of State changing its name to CoolHaus Works, LLC.  Professional Search and Placement, LLC has filed with the Colorado Secretary of State a Statement of Correction, correcting and eliminating the name change of Professional Search and Placement, LLC to CoolHaus Works, LLC.

At the time the Mounts created Professional Search, the robust economy had an unemployment rate of 3.5% allowing the staffing industry to enjoy revenues of $81 billion dollar a year. In July 2007, Professional Search maintained 22 contractor placements and made an average of one permanent placement per month.

With the decline in the economy, and in the technology sector, over the past few years, Professional Search's business began to suffer, causing a financial struggle for the company to pay its obligation to Chase.  In late 2007, with the recession impacting the employment sector, Professional Search experienced a significant drop in contractor clients. As of December 2007 Professional Search maintained only 5 contractor placements and for the preceding months had received no requests for permanent placements.  Compounding to business troubles, Professional Search's largest contractor, Jeppesen Sanderson, renegotiated its contract to exclude fees for contract positions converted to permanent positions and started charging Professional Search a fee of 2.25% per hour per contractor to continue to do business with Jeppesen.  Two additional significant clients, Arrow Electronics and Great West Life, both instituted a hiring freeze and ended all contract employment.  During the first quarter of 2008, Professional Search experienced a reduction to 4 contractor placements.  By May 2010, the unemployment rate was more than 8% and the professional placement industry was experiencing a revenue decline of over 40% industry wide. These events directly impacted Professional Search, who, by October 2010 had just 2 remaining contractor placements.

Professional Search took action to address its shrinking revenue base.  In September 2009,

Professional Search approached its landlord, requested and received new office space that provided a lower monthly lease payment and the landlord permitted Professional Search to sublet a portion of the space, which subtenant shared in the office expense.  Professional Search also reduced its expenses by lowering its monthly phone system charge and reducing its staff to one part-time employee.  At the same time, Professional Search contacted Chase and requested interest only payments for a period of twelve to eighteen months during which time Professional Search proposed to retool its business to meet the changes in the new economy and continue operating through the recession with a goal of emerging strong and healthy.  Chase granted relief of principal payments for a period of 6 months.  The recession extended beyond the 6 month period, though no further accommodations were made.

Further leading to the financial struggles of Professional Search, Mrs. Mount was diagnosed with cancer in May, 2010.  The illness and treatments interfered with her time to handle the business affairs of Professional Search.

Chase commenced litigation against Professional Search and Mount due to defaults under the Note, which caused the Debtors to seek relief under Chapter 11 of the Bankruptcy Code.

## DESCRIPTION OF ASSETS

As April, 2011, the values for the Debtors' primary assets are as follows:

| Asset | Market Value | Liquidation Value |
|---|---|---|
| **Professional Search:** | | |
| Cash | $6,404 | $0 |
| Office equipment, furnishings | $ 2,000 | $0 |
| Total: | $8,404 | $0 |
| **Mount:** | | |
| Residence | $1,260,245 | $0 |
| Cash | $5,154 | $5,154 |
| Household goods and furnishings | $3,950 | $0 |
| Books/Pictures/Other Collectables | $150 | $0 |
| Clothes | $475 | $0 |
| Jewelry | $450 | $0 |

| | | |
|---|---|---|
| 2010 Audi | $24,100 | $0 |
| 2010 Cadillac | $58,990 | $0 |
| 2010 Mercedes | $30,425 | $5,256 |
| 1 Share Nissan Corp. | $20 | $0 |
| 100% Shares Professional Search | $0 | $0 |
| Office equipment | <u>$1,025</u> | <u>$0</u> |
| Total: | $1,384,984 | $10,410 |

While the Debtors' assets have the market values listed above, liquidation value is substantially lower. All of the Professional Search's assets are pledged as collateral to their secured creditors, which secured claims exceed the value of the property. Mount's residence has no value for unsecured creditors taking into consideration the debt encumbering the property, the Mount's homestead exemption, and cost of sale. Mount's household goods, collectables, clothes, jewelry, and office equipment are all subject to the state law exemptions. Mount's stock holdings or other interests in businesses are comprised of: (a) one share of Nissan Corp., which if liquidated, due to the cost of the sale, would provide a nominal return to creditors, if any; and (b) Professional Search, which is in bankruptcy and the secured debt exceeds it value, and therefore is deemed to be valueless. Moreover, Professional Search is a service company, and its key asset is Mrs. Mount, rendering the company without value without Mrs. Mount. Accordingly, the liquidation value of Professional Search is $0. Mount, if liquidated, has an asset value of $15,631.

The Debtors are reserving the right to bring Avoidance Actions pursuant to 11 U.S.C. §§ 545 through 550 and state law based fraudulent conveyance actions. While the Debtors are still evaluating these claims, the Debtors preliminary analysis indicates these claims are not viable. The Debtors' analysis indicates that the majority of payments made during Avoidance Action period were likely made in the ordinary course of business and therefore are subject to defense pursuant to 11 U.S.C. § 547(c)(2). The Debtors did not make payments to insiders during the Avoidance Action period. Payments to non-insider creditors appear to have been made in the ordinary course. Secured creditors do not appear to have received more than they would have otherwise received in a Chapter 7 liquidation. In addition, certain creditors may have provided new value after the transfers, making the claims subject to defense pursuant to 11 U.S.C. § 547(c)(4). With respect to Professional Search,

8

the majority of the payments made to non-insiders are below the jurisdiction limits for commencing an Avoidance Action. If the actions were brought, the Debtors would also incur costs and expenses in the form of legal fees that may not be justified by the possible recovery. The Debtors expect that the recovery to creditors as proposed under the Plan will exceed any reasonable recovery that could be obtained solely from pursuit of the Avoidance Actions.

## DESCRIPTION OF LIABILITIES

A.     **Priority Claims**

    **1. Priority Claims**

Priority Claims are defined in the Plan as any pre-petition Claim entitled to a priority payment under 11 U.S.C. § 507(a) of the Bankruptcy Code, excluding any Administrative Claim or Tax Claim.


    **2. Administrative Claims**

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in §503(b) or §1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to §507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estates and operating the businesses of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the Estates under 28 U.S.C. §1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under §503(b) of the Bankruptcy Code. The Administrative Claims, including the professional fees incurred during the case which remain unpaid, are as follows:

Professional Search and Mount retained Kutner Miller Brinen, P.C. ("KMB") as their bankruptcy counsel. Professional Search provided KMB with a retainer in the amount of $16,704.81 for post-petition services. Mount provided KMB with a retainer in the amount of $28,338 for post-petition services. KMB has not filed an interim fee application for payment of fees and

reimbursement of costs.  Professional Search estimates that the total legal fees and costs to KMB as of the estimated date on which the Plan will become effective, September 1, 2011, will be $20,000. Mount estimates that the total legal fees and costs to KMB as of the estimated date on which the Plan will become effective, September 1, 2011, will be $30,000. The legal fees could increase or decrease depending on the level of litigation over the Plan and creditor claims.

The Debtors also retained Robert L. Tinnin, CPA.,P.C. ("Tinnin") to serve as their accountant to prepare Federal and State tax returns for the Debtors, and assist with other tax reporting obligations.  Tinnin has not filed an interim fee application for payment of fees and reimbursement of costs.  Professional Search estimates that the total accounting fees and costs to Tinnin as of the estimated date on which the Plan will become effective, September 1, 2011, will be $5,000.  Mount estimates that the total accounting fees and costs to Tinnin as of the estimated date on which the Plan will become effective, September 1, 2011, will be $5,000.

The Debtors have paid their administrative expenses in the ordinary course of business during the course of the bankruptcy case, and therefore do not believe there will be any other material administrative claims asserted against the estate.

### Tax Claims

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. §507(a)(8).  The Debtors did not schedule any Tax Claims and none have been asserted against the estates.

**B.    Secured Claims**

**PROFESSIONAL SEARCH:**

**1.  JP Morgan Chase Bank:**

JP Morgan Chase Bank is the holder of an Allowed Secured Claim arising from a secured loan and lien in substantially all of Professional Search's assets.  Professional Search's books and records show the balance on the loan is approximately $702,000.  JP Morgan Chase Bank has filed a Proof of Claim in the amount of $731,342.74, which is not disputed by Professional Search.  The collateral securing the loan has a value of approximately $14,709.

**MOUNT:**

**2.  Ally Financial.**

10

Ally Financial is the holder of an Allowed Secured Claim arising from a secured loan on Mount's 2010 Cadillac. Ally Financial is owed approximately $61,774. The collateral securing the loan has a value of approximately $58,990.

### 3.  Chase Home Equity:

Chase Home Equity is the holder of a Secured Claim arising from a secured loan and a second deed of trust for Mount's residence located at 738 East Fairchild Drive, Highlands Ranch, Colorado. Chase Home Equity is owed approximately $128,330. The collateral securing the loan has a value of approximately $1,146,245.

### 4.  Chase Home Finance:

Chase Home Finance is the holder of a Secured Claim arising from a secured loan and a first deed of trust for Mount's residence located at 738 East Fairchild Drive, Highlands Ranch, Colorado. Chase Home Finance is owed approximately $1,060,000. The collateral securing the loan has a value of approximately $1,146,245.

### C.  Non-Priority Unsecured Creditors

The Debtors have a number of unsecured pre-petition creditors. Several of the unsecured creditors have filed proofs of Claim as of the bar date set in this case for filing claims which was April 11, 2011. The Debtors have compiled a list of the Claims which they scheduled in the respective bankruptcy cases and the Claims filed by creditors. To the extent that a creditor who was scheduled by the Debtors filed a Claim, the amount of the Claim as filed by the creditor is considered in the analysis. The Claims list containing all known unsecured claims of Professional Search is attached to this Disclosure Statement as Exhibit A; and of Mount is attached hereto as Exhibit B. Unsecured Claims against Professional Search in the total amount of $1,468.25 have been asserted against Professional Search's estate. In addition, Chase will hold a deficiency Claim against the Professional Search estate in the amount of $716,343. The amount of debt that will likely be allowed as Class 3 unsecured creditors based upon Professional Search's books and records, exclusive of interest, and including the deficiency, is approximately $717,811. Unsecured Claims against Mount in the total amount of $732.655.85 have been asserted against Mount's estate. The amount of debt that will likely be allowed as Class E unsecured creditors based upon Mount's

books and records, exclusive of interest, is approximately $703,267.22.

**D.   Leases and Executory Contracts**
**     Contracts and Leases**

Professional Search is not party to any unexpired leases or executory contracts. Mount is party to two unexpired car leases. The Debtors are, under the terms of the Plan, assuming all executory contracts and unexpired leases previously assumed by the Debtors pursuant to Court Order or for which a motion to assume has been filed and is pending. The Debtors are also assuming those executory contracts and unexpired leases listed on Exhibit A to the Plan, which include the car leases. The Debtors maintain the right to modify Exhibit A of the Plan through the fifteenth day prior to the hearing to consider confirmation of the Plan. Confirmation of the Plan shall constitute a determination that the payments to be made to creditors of assumed leases or executory contracts pursuant to the Plan satisfies all conditions precedent set forth in 11 U.S.C. § 365.

The Debtors are rejecting all executory contracts and unexpired leases: (a) previously rejected by Court Order, (b) subject to a pending motion to reject, or (c) not specifically assumed in accordance with the Plan. All proofs of Claim with respect to Claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Court within twenty (20) days after the earlier of (i) the date of the Court order approving the Debtors' rejection of such executory contract or unexpired lease or (ii) the Confirmation Date.

## DESCRIPTION OF THE PLAN

The Debtors filed their Joint Plan of Reorganization with the United States Bankruptcy Court for the District of Colorado on May 20, 2011. The Plan provides for the reorganization of the Debtors. Funding of the Plan will be derived from Professional Search's business operations and from Mr. Mount's earning from his position as President of Richfield Hospitality.

The Plan provides for the specification and treatment of all creditors and Interest holders of the Debtors. The Plan identifies whether each Class is impaired or unimpaired. A Class is unimpaired only if the Plan leaves unaltered the legal, equitable or contractual obligations between

12

the Debtors and the unimpaired claimants or interest holders. The following is a brief summary of the Plan. The actual text of the Plan should be reviewed for more specific detail. In the event of any conflict between the Plan and this Disclosure Statement, the terms of the Plan govern.

As provided in § 1123(a)(1) of the Code, the Priority, Administrative and Tax Claims against the Debtors are designated as Class1. The holders of such Allowed Claims are not entitled to vote on the Plan and such claims will be paid in full.

The Plan divides the creditors in each case into separate classes. The classes are set forth as follows:

**PROFESSIONAL SEARCH**

Class 1 - All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

Class 2 - The Allowed Secured Claim held by JP Morgan Chase Bank.

Class 3 – The Allowed Claims held by unsecured creditors.

Class 4 – The Interest of Professional Search

**MOUNT**

Class A – All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

Class B – The Allowed Secured Claim held by Ally Financial.

Class C – The Allowed Secured Claim held by Chase Home Finance.

Class D – The Allowed Secured Claims held by Chase Home Equity.

Class E – The Allowed Unsecured Claims held by unsecured creditors.

Class F – The Interest held by Mount.


**A.     CLAIMS**

**Unclassified Priority Claims**

**1.     Administrative Claims**

The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the Allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such

Claims. Such Claims shall be paid in full on the Effective Date of the Plan, or, (i) with respect to Professional Search, if agreed to by the claim holder, in full from the Professional Search Unsecured Creditor Account established pursuant to paragraph 4.2 of the Plan; and (ii) with respect to Mount, in full from the Mount Unsecured Creditor Account established pursuant to paragraph 4.3 of the Plan or treated as otherwise agreed to by the particular holders of such Claims.

The Debtors expect that KMB, bankruptcy counsel for the Debtors, will hold an unpaid claim that constitutes a cost and expense of administration of the case for legal fees as of the Confirmation Date of the Plan estimated as September 1, 2011 in the amount of not less than $5,000.

The Debtors expect that Tinnin will hold an unpaid claim that constitutes a cost and expense of administration of the case for accounting fees as of the Confirmation Date of the Plan estimated as September 1, 2011 in the amount of not less than $10,000.

The Debtors have paid all other administrative expenses in the ordinary course of business during the course of the bankruptcy case, and therefore does not believe that any other material administrative claims exist against the estate.

### 2.    Tax Claims

The allowed Claims of a type specified in Section 507(a)(8) of the Code, Claims of unsecured governmental taxing authorities, shall be paid on the Effective Date. The Debtors did not schedule any Tax Claims and none have been asserted against the estate.

### 3.    United States Trustee Fees

The Debtors will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed. The Debtors shall request entry of a final decree closing the case upon satisfaction of the Debtors' Plan obligations to Class 9 general unsecured creditors. The Debtors however are not barred from seeking to close the case at an earlier time. Post-confirmation payments due to the United States Trustee are estimated to be less than $325 per quarter per Debtor until the cases are closed.

### Secured Claims

### PROFESSIONAL SEARCH

**Class 2, JP Morgan Chase Bank.** The Class 2 Secured Claim is impaired by the Plan. The Class 2 Secured Claim will be treated under the Plan as follows:

a. The principal amount of the Class 2 claim will be allowed in an amount of $15,000, or if the Class 2 claimant objects to such amount in writing and serves a copy of such objection on the Debtors at least fifteen (15) days prior to the commencement of the confirmation hearing, an amount determined by the Court at the confirmation hearing, or an amount as agreed upon by Professional Search and the Class 2 claimant on or before the Confirmation Date. Pursuant to 11 U.S.C. § 506, the claim is secured up to the value of the collateral for the claim and unsecured for the balance.

b. The Class 2 Claim will bear interest at the rate of: (i) 6.5% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 2 claimant objects to such rate in writing and serves a copy of such objection on the Debtors at least fifteen (15) days prior to the commencement of the confirmation hearing, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by Professional Search and the Class 2 claimant.

c. The Class 2 claimant will retain all liens that secured its Claim as of the Petition Date, subject to payment modification as set forth herein.

d. The monthly payment of the Class 2 Claim shall be calculated based upon a three (3) year amortization of the Claim and paid in monthly installments.


**MOUNT**

**Class B, Ally Financial.** The Class B Allowed Secured Claim is unimpaired by the Plan. The Class B Secured Claim will be Allowed in its full amount pursuant to the terms and conditions of the underlying loan documents which support, evidence, and underlie the Allowed Secured Claim. The legal, equitable and contractual rights to which the Class B claimant is entitled shall be unaltered by the Plan.


**Class C, Chase Home Finance.** The Class C Allowed Secured Claim is unimpaired by the Plan. The Class C Secured Claim will be Allowed in its full amount pursuant to the terms and

conditions of the underlying loan documents which support, evidence, and underlie the Allowed Secured Claim. The legal, equitable and contractual rights to which the Class C claimant is entitled shall be unaltered by the Plan.

**Class D, Chase Home Finance.** The Class D Allowed Secured Claim is unimpaired by the Plan. The Class D Secured Claim will be Allowed in its full amount pursuant to the terms and conditions of the underlying loan documents which support, evidence, and underlie the Allowed Secured Claim. The legal, equitable and contractual rights to which the Class D claimant is entitled shall be unaltered by the Plan.

**General Unsecured Creditors**

**Class 3, General Unsecured Creditors of Professional Search**

Class 3 consists of those unsecured creditors of Professional Search who hold Allowed Claims. Class 3 shall receive payment of their Allowed Claims as set forth below:

a. Holders of Class 3 Allowed Claims shall share on a Pro Rata basis monies deposited into the Unsecured Creditor Account Professional Search as set forth herein. As set forth in Article IV, paragraph 4.2 of the Plan, each month following the Effective Date of the Plan for a period of three years, Professional Search will deposit 12% of Gross Revenue into the Unsecured Creditor Account Professional Search. Every time three deposits have been made into the account, the balance of the account will be distributed to holders of Allowed Professional Search Administrative Claims who have agreed to accept payment under Article IV, paragraph 4.1 of the Plan. Once the holders of Professional Search Allowed Administrative Claims have been paid in full, every time thereafter three deposits have been made into the Unsecured Creditor Account Professional Search, the balance of the account will be distributed to Class 3 claimants holding Allowed Claims on a Pro Rata basis.

**Class E, General Unsecured Creditors of Mount**

Class E consists of those unsecured creditors of Mount who hold Allowed Claims. Class E shall receive payment of their Allowed Claims as set forth below:

16

a. Holders of Class E Allowed Claims shall share on a Pro Rata basis monies deposited into the Unsecured Creditor Account Mount as set forth herein. As set forth in Article IV, paragraph 4.3 of the Plan, each month following the Effective Date of the Plan until completion of the obligations to Class E under this Plan, Mount will deposit into the Unsecured Creditor Account Mount: (a) for the first four months of the Plan $1,247; and (b) for each month thereafter $1,412. Every time three deposits have been made into the account, the balance of the account will be distributed to holders of Allowed Mount Administrative Claims who have agreed to accept payment under Article IV, paragraph 4.1 of this Plan. Once the holders of Mount Allowed Administrative Claims have been paid in full, every time thereafter three deposits have been made into the Unsecured Creditor Account Mount, the balance of the account will be distributed for a period of 5 years to Class E claimants holding Allowed Claims on a Pro Rata basis.

b. Mount may pre-pay the Mount Administrative Claims and the $74,820 to Class E, at which time the Mount's obligations to Class E shall be deemed satisfied in full.

**Interest**

**Class 4, Interests in Professional Search**

Class 4 includes the Interests in Professional Search held by the pre-confirmation members. Class 4 is unimpaired by the Plan, provided Class 3 votes to accept the Plan. In the event Class 3 does not accept the Plan, all outstanding shares in Professional Search shall be cancelled and all assets of Professional Search shall be consolidated into the Mount estate which estate shall assume liability for all payments due to Mount creditors under this Plan. In such event the cases will be substantively consolidated upon confirmation.

**Class F, Interests in Mount**

Class F includes the Interests in Mount in their property. Class F is unimpaired by the Plan. On the Effective Date of the Plan Class F shall retain its interests in all assets owned prior to the Confirmation Date.

## PLAN FEASIBILITY

The Debtors believe that the Plan, as proposed, is feasible.  The overall feasibility of the Plan is premised upon the restructuring of Professional Search's debt obligation to Chase.  As of September 2011, Professional Search has developed any action plan, which it has put into place, to develop the business and move it towards profitability as follows:

- Mrs. Mount has been named the Colorado Forum Chair for the Women's Business Enterprise ("WBE").  This is one of only three organizations that provide certification to WBE's which is nationally accepted by thousands of major corporations and a select group of government entities.
- Professional Search has identified sub-tier/contract opportunities with companies such as Bounty Jobs, ISYS Technologies, Kelly Services, IQ Navigator and Stanley Reid and Company.
- Professional Search has identified and started to target industries that are and have grown in the new economy such as Healthcare, Hospitality, Banking and Government.
- Professional Search has recently developed business relationships with Just Associates (Healthcare), ISYS Technologies (Government/Defense), Highgate Holdings, Interstate Hotels, Brunswick, and Hyatt (Hospitality) 1st Bank (Banking) and Verio (Website Management)

Industry studies show the staffing industry is poised to enjoy a 12% increase in demand for permanent placement and a 13% increase for temporary/contract placement for the remainder of 2011 and 2012.

In addition, Mr. Mount will continue his employment as President of Richfield Hospitality Management Company ("Richfield").   Richfield provides hotel management solutions. Mr. Mount, at the time of his employment with Richfield in or around October, 2009, signed an employment agreement, which provides:

a) An annual salary of $265,000, with reviews conducted annually in February.

b) Company benefits, including medical, dental, vision, short and long term disability, life insurance, deferred compensation 401K, and tax saver medical reimbursement plan.

c) A commission program to remain in effect for two years commencing November 9, 2009.  The commission structure is as follows:

18

**Commission Structure (Third Party Management or Acquisition Contracts):**

If Mount or any of the deal executives secures a new third-party management or acquisition contract with a term of no less than one year. Richfield will pay a commission to Mount as set forth below.

Commissions:

Commissions will be equal to 5% of projected net present value (excluding bill backs, and including a debit for the cost of capital for any investments) of the Commissionable for the first 16 months of the management contract. The net present value will be calculated using an annually determined discount rate based upon Richfield's cost of capital, not to exceed 10%.

Initial Payout:

One third of the net present value of the first 36 months of projected fees will be paid at management contract commencement, and will be based upon budgeted/projected revenues.

2nd Payout;

One third to be paid at the end of the quarter of the first anniversary of the contract commencement date, and will be based upon budgeted/projected revenues for year two, adjusted for variances to actual fees collected in year one.

3rd Payout:

One third to be paid at the end of the quarter of the second anniversary of the contract commencement date, and will be based upon budgeted/projected revenues for year three, adjusted for variances to actual fees collected in year two.

Year Three True-up:

At the end of the quarter after the third anniversary of the contract commencement date, any adjustments for variances to actual fees collected in year three will be deducted from or credited to future commission payments.

**Commission Structure (New Development/Construction Contracts);**

If Mount or any of the deal executives secures a new development/construction management contract with a term of no less than one year, Richfield will pay a Commission to Mount as set forth below.
Criteria:

Commission will be equal to 5% of the projected net present value (excluding bill-backs, and including the cost of capital of any investments) of the Commissionable Fees for the first 36 months of the management contract. The net present value will be calculated using an annually determined discount rate based upon Richfield's cost of capital, not to exceed 10%.

Initial Payout:

One third of the net present value of the first 36 months of projected fees will be paid at management contract commencement, and will be based upon projected revenues.

2nd Payout:

One third to be paid upon the opening of the hotel, and will be based upon post-opening budgeted/projected revenues for year one, adjusted tor variances to actual fees previously collected.

3rd Payout:

One third to be paid at the end of the quul1er of the first anniversary of the opening date of the new hotel, adjusted for variances to actual fees collected in year one.

True-Up:

At the end of the quarter after the third anniversary of the hotel opening date, any adjustments for variances to actual fees collected in year two will be deducted froml or credited to future commission payments.

## PROFESSIONAL SEARCH

Attached to this Disclosure Statement as Exhibit C are the detailed projections of Professional Search's future income and expenses from the operation of its business, including payments to creditors under the Plan (the "Professional Search Projections"). The Professional Search Projections assume that the Plan will be confirmed on September 1, 2011. As set forth on the Projections, Professional Search's Gross Income upon the Effective Date of the Plan assumed to be September 1, 2011, and for the remainder of 2011 will be $17,500. Professional Search's projected expenses, including the monthly payment into the Professional Search Unsecured Creditor Account, for the first year of the Plan will be $14,834. It is projected Professional Search will have surplus for this period of $2,666.

20

The Projections further assume Professional Search's Gross Income for calendar year 2012 will be $248,700. Professional Search's projected expenses, including the monthly payment into the Professional Search Unsecured Creditor Account, for year 2012 will be $173,826. It is projected Professional Search will have surplus for this period of $74,874.

Professional Search's Gross Income for calendar year 2013 will be $248,700. Professional Search's projected expenses, including the monthly payment into the Professional Search Unsecured Creditor Account, for the third year of the Plan will be $173,826. It is projected Professional Search will have surplus for this period of $74,874.

Professional Search's Gross Income for the remaining term of the Plan, January through August, 2014 will be $174,700. Professional Search's projected expenses, including the monthly payment into the Professional Search Unsecured Creditor Account, for the remaining term of the Plan will be $122,169. It is projected Professional Search will have surplus for this period of $52,531.

**MOUNT**

Attached to this Disclosure Statement as Exhibit D are the detailed projections of Mount's future income and expenses, including payments to creditors under the Plan (the "Mount Projections"). The Mount Projections show all of Mounts' disposable income is being paid to creditors.

The Mount Projections assume that the Plan will be confirmed on September 1, 2011. As set forth on the Projections, Mount's income upon the Effective Date of the Plan assumed to be September 1, 2011, and for the remainder of 2011 will be $62,766. Mount's projected expenses, including the monthly payment into the Mount Unsecured Creditor Account, for the first year of the Plan will be $62,766.

The Projections further assume Mount's Gross Income for calendar year 2012 will be $192,064. Mount's projected expenses, including the monthly payment into the Mount Unsecured Creditor Account, for year 2012 will be $192,064.

The Projections further assume Mount's Gross Income for calendar year 2013 will be

21

$195,905.  Mount's projected expenses, including the monthly payment into the Mount Unsecured Creditor Account, for year 2013 will be $195,905.

The Projections further assume Mount's Gross Income for calendar year 2014 will be $199,823.  Mount's projected expenses, including the monthly payment into the Mount Unsecured Creditor Account, for year 2014 will be $199,823.

The Projections further assume Mount's Gross Income for calendar year 2015 will be $203,820.  Mount's projected expenses, including the monthly payment into the Mount Unsecured Creditor Account, for year 2015 will be $203,820.

Mount's Gross Income for the remaining term of the Plan, January through August, 2016 will be $138,597.  Mount's projected expenses, including the monthly payment into the Mount Unsecured Creditor Account, for the remaining term of the Plan will be $138,597.

**Performance During Bankruptcy Case**

Attached hereto as Exhibit E are the profit and loss statements and balance sheets for Professional Search for the time period during which Professional Search was in bankruptcy.

## TAX CONSEQUENCE

The Debtors are not providing tax advice to creditors or interest holders.  Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation.  Generally, unsecured creditors should have no tax impact as a result of Plan confirmation.  The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized.  Interest holders may have very complicated tax effects as a result of Plan confirmation.

## EVENTS DURING THE CHAPTER 11 CASE

There were no significant events that occurred during the bankruptcy case allowing the Debtors to focus on their reorganization efforts.

22

## LIQUIDATION ANALYSIS UNDER CHAPTER 7

The principal alternative to the Debtors' reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code.  Chapter 7 requires the liquidation of the Debtors' assets by a Trustee who is appointed by the United States Trustee's office.  In a Chapter 7 case, the Chapter 7 Trustee would take over control of the assets.  The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

Under a Chapter 7 liquidation, secured creditors would likely obtain relief from the automatic stay and foreclose their security interests in Debtors' property.  Attached hereto as Exhibit F is the Debtors' liquidation analysis (the "Liquidation Analysis").

All of Professional Search's property is pledged as collateral to its secured creditor, which secured claim exceeds the value of the property.  Thus, in a Chapter 7 Class 3 unsecured creditors of Professional Search would not receive a distribution.

Mount's residence has no value for unsecured creditor taking into consideration the debt encumbering the property, the Mount's homestead exemption, and cost of sale.  Mount's household goods, collectables, clothes, jewelry, and office equipment are all subject to the state law exemptions.  Mount's stock holdings or other interests in businesses are comprised of: (a) Nissan Corp., which if liquidated, due to the cost of the case, would provide no return to creditors; and (b) Professional Search, which is in bankruptcy and the secured debt exceeds it value, and therefore is deemed to be valueless.  Moreover, Professional Search is a service company, and its key asset is Mrs. Mount, rendering the company without value without Ms. Mount.  As set forth in the Liquidation Analysis, after the secured creditors foreclosed on their collateral and considering Mount's state law exemptions and cost of liquidation at 15% there would be approximately $10,410 in the estate.  Code Section 326 defines the limitations of compensation of the Chapter 7 Trustee. Assuming an estate of $10,410, the trustee compensation would be approximately $1,791. Assuming $5,000 in professional fees and the administration of the Chapter 7 estate there would be $3,619 remaining in the estate. Following the payment of the Chapter 7 cost and expenses of administration, the Chapter 7 Trustee would pay the Chapter 11 costs and expenses of administration, and then other priority claims existing in the Chapter 11 bankruptcy. Administrative

23

and priority claims in the Chapter 11 case are expected to total not less than $15,000.00. Under these circumstances, Class E unsecured creditors would not receive a distribution.

Given the alternative under a Chapter 7 scenario, the Debtors' proposed Chapter 11 Plan provides a substantially better alternative for unsecured creditors. With respect to Professional Search, the Plan contemplates Class 3 unsecured creditors will receive $86,388 to be paid on a pro rata basis to unsecured creditors after payments to administrative claimants. Assuming claims against the Professional estate totaling $717,811 the pro rata distribution will be 11%. In a Chapter 7, Class 3 would not receive a distribution.

The Plan contemplates that Class E Mount unsecured creditors will receive $74,820 to be paid on a pro rata basis to unsecured creditors after payments to administrative claimants. Assuming claims against the Mount estate totaling $732.655.85 the pro rata distribution will be 10%. In a Chapter 7, Class E would not receive a distribution.

It is therefore urged by the Debtors that all creditors vote in favor of the Plan.

## DISPOSABLE INCOME ANALYSIS

Code § 1129(a)(15) provides, among other things, if a creditor holding an Allowed Unsecured Claim of Mount objects to confirmation of the Mount portion of the Plan, the value of the property to be distributed under the Plan must equal or exceed the projected "disposable income" of Mount, after considering reasonable living and business expenses, as the term is defined in section 1325(b)(2), to be received during the 5 year term of the Plan. Pursuant to the Mount Projections (Exhibit D), Mount's disposable income over the 5 year term of the Plan is projected to be $74,820, which amount the Debtors are proposing to pay to creditors.

DATED: August 8, 2011

GREG T. MOUNT
MELISSA M. MOUNT
PROFESSIONAL SEARCH & PLACEMENT, LLC d/b/a
COOL HAUS WORKS, LLC

By: _____
     Greg T. Mount, individually and for
     Professional Search & Placement, LLC d/b/a Cool
     Haus Works, LLC

By: _____
     Melissa M. Mount, individually and for
     Professional Search & Placement, LLC d/b/a Cool
     Haus Works, LLC

Kutner Miller Brinen, P.C. ("KMB") has acted as legal counsel to Melissa M. Mount and Greg T. Mount and Professional Search & Placement, LLC d/b/a Cool Haus Works, LLC on bankruptcy matters during the Chapter 11 cases. KMB has prepared this Disclosure Statement with information provided primarily by Melissa M. Mount and Greg T. Mount and Professional Search & Placement, LLC d/b/a Cool Haus Works, LLC. The information contained herein has been approved by Melissa M. Mount and Greg T. Mount and Professional Search & Placement, LLC d/b/a Cool Haus Works, LLC. KMB has not made any separate independent investigation as to the veracity or accuracy of the statements contained herein.

Counsel to the Debtors and
Debtors- In-Possession M. Mount and Greg T. Mount
and Professional Search & Placement, LLC d/b/a Cool Haus Works, LLC:

KUTNER MILLER BRINEN, P.C.

By: _____
        Aaron A. Garber (#36099)
        303 East 17th Avenue
        Suite 500
        Denver, CO 80203
        Telephone: (303) 832-2400
        Telecopier: (303) 832-1510
        Telecopier: (303) 832-1510

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 8, 2011, I served by prepaid first class mail a copy of the foregoing **AMENDED DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF REORGANIZATION DATED MAY 20, 2011** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Paul Moss, Esq.
United States Trustee
999 18th Street
Suite 1551
Denver, CO 80202

Stephen P. Hale, Esq.
Bert Echols, Esq.
The Hale Law Group, PLLC
88 Union Avenue
Suite 700
Memphis, TN 38103

GE Money Bank
c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605
ATTN: Ramesh Singh

Angela R. Whitford, Esq.
633 17th Street
Suite 3000
Denver, CO 80202

Robert L. Tinnin
Paragon Building
7100 East Belleview Avenue
Suite 315
Greenwood Village, CO 80111

Deanna L. Westfall, Esq.
Britney Beall-Eder, Esq.
Castle Stawiarski, LLC
999 18th Street
Suite 2201
Denver, CO 80202

**Vicky Martina**

| CLAIMANT | SCHEDULED AMOUNT | PROOF OF CLAIM |
|---|---|---|
| Chubb Insurance | 1,468.25 | 0.00 |
| **TOTAL** | **1,468.25** | **0.00** |
| **TOTAL CLAIMS ASSERTED** | | **1,468.25** |

Total claims asserted is comprised of the
"scheduled amount" except if a proof of claim is
filed, in which case the proof of claim is
considered in determing the total claims asserts

**EXHIBIT A**

| CLAIMANT | SCHEDULED AMOUNT | PROOF OF CLAIM | DIFFERENCE |
|---|---|---|---|
| American Express | 897.27 | 942.90 | 45.63 |
| Chase Bank | 369.95 | | 0.00 |
| JP Morgan Chase | 702,000.00 | 731,343.00 | 29,343.00 |
| **TOTAL** | **703,267.22** | **732,285.90** | **29,388.63** |
| **TOTAL CLAIMS ASSERTED** | | **732,655.85** | |

Total claims asserted is
comprised of the
"scheduled amount"
except if a proof of claim
is filed, in which case
the proof of claim is
considered in determing
the total claims asserts

**EXHIBIT B**

| | | | | Sep 11F | Oct 11F | Nov 11F | Dec 11F |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| | | Income | | | | | |
| | | | 47900 · Sales | | | | |
| | | | Consultants Gross Billiable | 0 | 0 | 0 | 0 |
| | | | Misc Income | 0 | 0 | 0 | 0 |
| | | | Placement Fees | 5,000 | 5,000 | 5,000 | 2,500 |
| | | | 47900 · Sales - Other | 0 | 0 | 0 | 0 |
| | | | Total 47900 · Sales | 5,000 | 5,000 | 5,000 | 2,500 |
| | | | | | | | |
| | | | 49900 · Uncategorized Income | 0 | 0 | 0 | 0 |
| | | **Total Income** | | 5,000 | 5,000 | 5,000 | 2,500 |
| | Gross Profit | | | 5,000 | 5,000 | 5,000 | 2,500 |
| | | Expense | | | | | |
| | | | 60000 · Advertising and Promotion | 500 | 500 | 500 | 500 |
| | | | 60200 · Automobile Expense | 795 | 795 | 795 | 795 |
| | | | 60400 · Bank Service Charges | 10 | 10 | 10 | 10 |
| | | | 60415 · Finance & Late Fees | 0 | 0 | 0 | 0 |
| | | | 61000 · Business Licenses and Permits | 0 | 0 | 0 | 0 |
| | | | 61100 · Membership/Seminars/Training | 100 | 100 | 100 | 100 |
| | | | 61400 · Charitable Contributions | 150 | 150 | 150 | 150 |
| | | | 61700 · Computer and Internet Expenses | 50 | 50 | 50 | 50 |
| | | | 62300 · Employment Screening | | | | |
| | | | 62310 · Drug Test | 0 | 0 | 0 | 0 |
| | | | 62300 · Employment Screening - Other | 0 | 0 | 0 | 0 |
| | | | Total 62300 · Employment Screening | 0 | 0 | 0 | 0 |
| | | | 62500 · Dues and Subscriptions | 80 | 80 | 80 | 80 |
| | | | 63300 · Insurance Expense | | | | |
| | | | 63310 · General Liability Insurance | 2,200 | 0 | 0 | 2,200 |
| | | | 63320 · Life Insurance | 588 | 100 | 100 | 588 |
| | | | Total 63300 · Insurance Expense | 0 | 100 | 100 | 0 |
| | | | 63400 · Interest Expense | | | | |
| | | | 63410 · Interest Facility #1 | 0 | 0 | 0 | 0 |
| | | | 63420 · Interest - Line of Credit | 0 | 0 | 0 | 0 |
| | | | Total 63400 · Interest Expense | 0 | 0 | 0 | 0 |
| | | | 64200 · Gifts & Contributions | 0 | 0 | 0 | 0 |
| | | | 64300 · Meals and Entertainment | 50 | 50 | 50 | 50 |
| | | | 64900 · Office Expense | 185 | 185 | 185 | 185 |
| | | | | | | | |
| | | | 66000 · Payroll Expenses | | | | |
| | | | 66010 · Office Wages | 0 | 0 | 0 | 0 |
| | | | 66020 · Recruiters Salaries | 0 | 0 | 0 | 0 |
| | | | 66025 · Bonuses - Recruiters | 0 | 0 | 0 | 0 |
| | | | 66030 · Consultant Wages | 0 | 0 | 0 | 0 |
| | | | Total 66000 · Wages | 0 | 0 | 0 | 0 |
| | | | 66050 · Social Security Tax | 0 | 0 | 0 | 0 |
| | | | 66060 · Medicare | 0 | 0 | 0 | 0 |
| | | | 66070 · Federal Unemployment | 0 | 0 | 0 | 0 |
| | | | 66080 · State Unemployment | 0 | 0 | 0 | 0 |
| | | | 66100 · Worker's Compensation | 0 | 0 | 0 | 0 |
| | | | 66110 · Health Insurance | 0 | 0 | 0 | 0 |
| | | | 66120 · Payroll Fee's | 180 | 180 | 180 | 180 |
| | | | | 0 | 0 | 0 | 0 |
| | | | Total 66000 · Payroll Expenses | 180 | 180 | 180 | 180 |
| | | | 66500 · Postage and Delivery | 50 | 50 | 50 | 50 |
| | | | 66600 · Printing and Reproduction | 0 | 0 | 0 | 0 |
| | | | 66700 · Professional Fees | | | | |

**EXHIBIT C**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | 66720 · Accountant | 200 | 200 | 200 | 200 |
| | | | | 66730 · Data Base (Big Biller) | 70 | 70 | 70 | 70 |
| | | | | 66740 · Posting/ Research Sites | 470 | 470 | 470 | 470 |
| | | | | 66750 · Project Consultants | 0 | 0 | 0 | 0 |
| | | | | 66700 · Professional Fees -US Trustee | | | 350 | 0 |
| | | | Total 66700 · Professional Fees | | 0 | 0 | 0 | 0 |
| | | | 67100 · Office Lease Expense | | 0 | 0 | 0 | 0 |
| | | | 68000 · Taxes - Property | | 0 | 0 | 0 | 0 |
| | | | 68100 · Telephone Expense | | | | | |
| | | | | 68110 · Cell Phones | 135 | 135 | 135 | 135 |
| | | | | 68120 · Office System | 0 | 0 | 0 | 0 |
| | | | Total 68100 · Telephone Expense | | 135 | 135 | 135 | 135 |
| | | | 68400 · Travel Expense | | 175 | 175 | 1,200 | 0 |
| | | Total Expense | | | 2,481 | 2,581 | 3,586 | 2,286 |
| | | | | | | | | |
| Net Ordinary Income | | | | | 2,539 | 2,439 | 1,414 | 214 |
| 63400 ·Repayment | | | | | | | | |
| 63410 · Secured Creditors | | | | | 460 | 460 | 460 | 460 |
| Loan Repayment Term=$1 | Rebates and Credits | | | | 0 | 0 | 0 | 0 |
| 63420 · Unsecured Creditors (12% Gross Profit) | | | | | 600 | 600 | 600 | 300 |
| (JP Morgan Chase/Chubb ($703,546) | | | | | | | | |
| | | | | | 1,479 | 1,379 | 354 | 214 |

Ordinary Income/Expense

Income

47900 · Sales
- Consultants Gross Billable
- Misc Income
- Placement Fees
- 47900 · Sales - Other

Total 47900 · Sales

49900 · Uncategorized Income

Total Income

Gross Profit

Expense
- 60000 · Advertising and Promotion
- 60200 · Automobile Expense
- 60400 · Bank Service Charges
- 60415 · Finance & Late Fees
- 61000 · Business Licenses and Permits
- 61700 · Membership/Seminars/Training
- 61400 · Charitable Contributions
- 61700 · Computer and Internet Expenses
- 62000 · Employment Screening
  - 62310 · Drug Test
  - 62300 · Employment Screening - Other
- Total 62300 · Employment Screening
- 62000 · Dues and Subscriptions
- 63300 · Insurance Expense
  - 63310 · General Liability Insurance
  - 63220 · Life Insurance
- Total 63300 · Insurance Expense
- 63400 · Interest Expense
  - 63410 · Interest Facility #1
  - 63420 · Interest - Line of Credit
- Total 63400 · Interest Expense
- 64200 · Gifts & Contributions
- 64300 · Meals and Entertainment
- 64800 · Office Expense
- 66000 · Payroll Expenses
  - 66070 · Office Wages
  - 66025 · Recruiters Salaries
  - 66025 · Bonuses - Recruiters
  - 66030 · Commission Wages
  - Total 66000 · Wages
  - 66085 · Social Security Tax
  - 66090 · Medicare
  - 66070 · Federal Unemployment
  - 66065 · State Unemployment
  - 66140 · Worker's Compensation
  - 66110 · Health Insurance
  - 66120 · Payroll Fee's
- Total 66000 · Payroll Expenses
- 66800 · Postage and Delivery
- 66600 · Printing and Reproduction
- 66700 · Professional Fees
  - 66720 · Accountant
  - 66730 · Data Base (Big Biller)
  - 66740 · Posting Research Sites
  - 66750 · Project Consultants
  - 66700 · Professional Fees -US Trustee
- Total 66700 · Professional Fees
- 67100 · Office Lease Expense
- 68000 · Taxes - Property
- 68100 · Telephone Expense
  - 68110 · Cell Phone
  - 68120 · Office System
- Total 68100 · Telephone Expense
- 68400 · Travel Expense

Total Expense

Net Ordinary Income
63400 · Repayment
63416 · Secured Creditors
Loan Repayment Terms Rebates and Credits
63420 · Unsecured Creditors (12% Gross Profit)
JP Morgan Chase/Chubb ($703,646)

2011P Mount Monthly Expenses

|  |  | September | October | November | December |
|---|---|---|---|---|---|
| US Trustee Administrative Fee |  | $ 165 | $ 165 | $ 165 | $ 165 |
| Chase Home Mortgage | Monthly | $ 5,190 | $ 5,190 | $ 5,190 | $ 5,190 |
| Cell Phones | Monthly | $ 265 | $ 265 | $ 265 | $ 265 |
| Cable | Monthly | $ 140 | $ 140 | $ 140 | $ 140 |
| School Activities/Supplies | Monthly | $ 225 | $ 225 | $ 225 | $ 225 |
| Medical/Dental Co Pay | Monthly | $ 160 | $ 160 | $ 160 | $ 160 |
| Prescriptions | Monthly | $ 95 | $ 95 | $ 95 | $ 95 |
| Fitness Center | Monthly | $ 150 | $ 150 | $ 150 | $ 150 |
| Audi Financial Services | Monthly | $ 742 | $ 742 | $ 742 | $ 742 |
| Chase Home Equity | Monthly | $ 945 | $ 945 | $ 945 | $ 945 |
| Home Phone/Internet | Monthly | $ 45 | $ 45 | $ 45 | $ 45 |
| Electricity | Monthly | $ 325 | $ 325 | $ 325 | $ 325 |
| Water/Sewer/Gas | Monthly | $ 210 | $ 210 | $ 210 | $ 210 |
| HOA Dues-HRCA | Monthly | $ 280 | $ 280 | $ 280 | $ 280 |
| Homeowners/Auto Insuranc | Monthly | $ 480 | $ 480 | $ 480 | $ 480 |
| Property Taxes | Monthly | $ 730 | $ 730 | $ 730 | $ 730 |
| Pet Care | Monthly | $ 125 | $ 125 | $ 125 | $ 125 |
| Food/Groceries/Meals | Monthly | $ 990 | $ 990 | $ 990 | $ 990 |
| Gas | Monthly | $ 380 | $ 380 | $ 380 | $ 380 |
| Home Maintenance | Monthly | $ 190 | $ 190 | $ 190 | $ 190 |
| Heatlhcare Insurance | Monthly | $ 625 | $ 625 | $ 625 | $ 625 |
| Ally Financial Services | Monthly | $ 908 | $ 908 | $ 908 | $ 908 |
| Personal Care | Monthly | $ 150 | $ 150 | $ 150 | $ 150 |
| Cash | Monthly | $ 400 | $ 400 | $ 400 | $ 400 |
| Entertainment | Monthly | $ 150 | $ 150 | $ 150 | $ 150 |
| Drycleaning | Monthly | $ 130 | $ 130 | $ 130 | $ 130 |
| Clothing | Monthly | $ 250 | $ 250 | $ 250 | $ 250 |
| Monthly Income |  | 15692 | 15692 | 15692 | 15692 |
| **Total Monthly Expenses** |  | **$ 14,445** | **$ 14,445** | **$ 14,445** | **$ 14,445** |
| Unsecured Creditor Payment |  | $ 1,247 | $ 1,247 | $ 1,247 | $ 1,247 |

**EXHIBIT D**

2012 Mount Monthly Expenses

| | | January | February | March | April | May |
|---|---|---|---|---|---|---|
| US Trustee Administrative Fee | | $ 165.00 | $ 165.00 | $ 165.00 | | |
| Chase Home Mortgage | Monthly | $ 5,190.00 | $ 5,190 | $ 5,190 | $ 5,190 | $ 5,190 |
| Cell Phones | Monthly | $ 280 | $ 280 | $ 280 | $ 280 | $ 280 |
| Cable | Monthly | $ 148 | $ 148 | $ 148 | $ 148 | $ 148 |
| School Activities | Monthly | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 |
| Medical/Dental Co Pay | Monthly | $ 160 | $ 160 | $ 160 | $ 160 | $ 160 |
| Prescriptions | Monthly | $ 95 | $ 95 | $ 95 | $ 95 | $ 95 |
| Fitness Center | Monthly | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 |
| Audi Financial Services | Monthly | $ 742 | $ 742 | $ 742 | $ 742 | $ 742 |
| Chase Home Equity | Monthly | $ 945 | $ 945 | $ 945 | $ 945 | $ 945 |
| Home Phone/Internet | Monthly | $ 47 | $ 47 | $ 47 | $ 47 | $ 47 |
| Electricity | Monthly | $ 343 | $ 343 | $ 343 | $ 343 | $ 343 |
| Water/Sewer/Gas | Monthly | $ 222 | $ 222 | $ 222 | $ 222 | $ 222 |
| HOA Dues-HRCA | Monthly | $ 295 | $ 295 | $ 295 | $ 295 | $ 295 |
| Homeowners/Auto Insuranc | Monthly | $ 506 | $ 506 | $ 506 | $ 506 | $ 506 |
| Property Taxes | Monthly | $ 770 | $ 770 | $ 770 | $ 770 | $ 770 |
| Pet Care | Monthly | $ 132 | $ 132 | $ 132 | $ 132 | $ 132 |
| Food/Groceries/Meals | Monthly | $ 1,044 | $ 1,044 | $ 1,044 | $ 1,044 | $ 1,044 |
| Gas | Monthly | $ 401 | $ 401 | $ 401 | $ 401 | $ 401 |
| Home Maintenance | Monthly | $ 190 | $ 190 | $ 190 | $ 190 | $ 190 |
| Heatlhcare Insurance | Monthly | $ 625 | $ 625 | $ 625 | $ 625 | $ 625 |
| Ally Financial Services | Monthly | $ 908 | $ 908 | $ 908 | $ 908 | $ 908 |
| Personal Care | Monthly | $ 158 | $ 158 | $ 158 | $ 158 | $ 158 |
| Cash | Monthly | $ 422 | $ 422 | $ 422 | $ 422 | $ 422 |
| Entertainment | Monthly | $ 158 | $ 158 | $ 158 | $ 158 | $ 158 |
| Drycleaning | Monthly | $ 137 | $ 137 | $ 137 | $ 137 | $ 137 |
| Clothing | Monthly | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 |
| Monthly Income | | 16005 | 16005 | 16005 | 16005 | 16005 |
| **Total Monthly Expenses** | | **$ 14,759** | **$ 14,759** | **$ 14,759** | **$ 14,594** | **$ 14,594** |
| Unsecured Creditor Payment | | $ 1,247 | $ 1,247 | $ 1,247 | $ 1,412 | $ 1,412 |
| **Total   Quarterly** | | | | **$ 3,741** | | |

| | June | | July | | August | | September | | October | | November | | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 |
| $ | 280 | $ | 280 | $ | 280 | $ | 280 | $ | 280 | $ | 280 | $ | 280 |
| $ | 148 | $ | 148 | $ | 148 | $ | 148 | $ | 148 | $ | 148 | $ | 148 |
| $ | 225 | $ | 225 | $ | 225 | $ | 225 | $ | 225 | $ | 225 | $ | 225 |
| $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 |
| $ | 95 | $ | 95 | $ | 95 | $ | 95 | $ | 95 | $ | 95 | $ | 95 |
| $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 |
| $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 |
| $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 |
| $ | 47 | $ | 47 | $ | 47 | $ | 47 | $ | 47 | $ | 47 | $ | 47 |
| $ | 343 | $ | 343 | $ | 343 | $ | 343 | $ | 343 | $ | 343 | $ | 343 |
| $ | 222 | $ | 222 | $ | 222 | $ | 222 | $ | 222 | $ | 222 | $ | 222 |
| $ | 295 | $ | 295 | $ | 295 | $ | 295 | $ | 295 | $ | 295 | $ | 295 |
| $ | 506 | $ | 506 | $ | 506 | $ | 506 | $ | 506 | $ | 506 | $ | 506 |
| $ | 770 | $ | 770 | $ | 770 | $ | 770 | $ | 770 | $ | 770 | $ | 770 |
| $ | 132 | $ | 132 | $ | 132 | $ | 132 | $ | 132 | $ | 132 | $ | 132 |
| $ | 1,044 | $ | 1,044 | $ | 1,044 | $ | 1,044 | $ | 1,044 | $ | 1,044 | $ | 1,044 |
| $ | 401 | $ | 401 | $ | 401 | $ | 401 | $ | 401 | $ | 401 | $ | 401 |
| $ | 190 | $ | 190 | $ | 190 | $ | 190 | $ | 190 | $ | 190 | $ | 190 |
| $ | 625 | $ | 625 | $ | 625 | $ | 625 | $ | 625 | $ | 625 | $ | 625 |
| $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 |
| $ | 158 | $ | 158 | $ | 158 | $ | 158 | $ | 158 | $ | 158 | $ | 158 |
| $ | 422 | $ | 422 | $ | 422 | $ | 422 | $ | 422 | $ | 422 | $ | 422 |
| $ | 158 | $ | 158 | $ | 158 | $ | 158 | $ | 158 | $ | 158 | $ | 158 |
| $ | 137 | $ | 137 | $ | 137 | $ | 137 | $ | 137 | $ | 137 | $ | 137 |
| $ | 300 | $ | 300 | $ | 300 | $ | 300 | $ | 300 | $ | 300 | $ | 300 |
| | 16005 | | 16005 | | 16005 | | 16005 | | 16005 | | 16005 | | 16005 |
| $ | **14,594** | $ | **14,594** | $ | **14,594** | $ | **14,594** | $ | **14,594** | $ | **14,594** | $ | **14,594** |
| $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 |
| $ | **4,236** | | | | | $ | **4,236** | | | | | $ | **4,236** |

2013 Mount Monthly Expenses

| | | January | February | March | April | May |
|---|---|---|---|---|---|---|
| Chase Home Mortgage | Monthly | $ 5,190.00 | $ 5,190 | $ 5,190 | $ 5,190 | $ 5,190 |
| Cell Phones | Monthly | $ 294 | $ 294 | $ 294 | $ 294 | $ 294 |
| Cable | Monthly | $ 156 | $ 156 | $ 156 | $ 156 | $ 156 |
| School Activities | Monthly | $ 275 | $ 275 | $ 275 | $ 275 | $ 275 |
| Prescriptions | Monthly | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 |
| Medical/Dental Co Pay | Monthly | $ 160 | $ 160 | $ 160 | $ 160 | $ 160 |
| Fitness Center | Monthly | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 |
| Audi Financial Services | Monthly | $ 742 | $ 742 | $ 742 | $ 742 | $ 742 |
| Chase Home Equity | Monthly | $ 945 | $ 945 | $ 945 | $ 945 | $ 945 |
| Home Phone/Internet | Monthly | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 |
| Electricity | Monthly | $ 361 | $ 361 | $ 361 | $ 361 | $ 361 |
| Water/Sewer/Gas | Monthly | $ 233 | $ 233 | $ 233 | $ 233 | $ 233 |
| HOA Dues-HRCA | Monthly | $ 311 | $ 311 | $ 311 | $ 311 | $ 311 |
| Homeowners/Auto Insuranc | Monthly | $ 533 | $ 533 | $ 533 | $ 533 | $ 533 |
| Property Taxes | Monthly | $ 811 | $ 811 | $ 811 | $ 811 | $ 811 |
| Pet Care | Monthly | $ 123 | $ 123 | $ 123 | $ 123 | $ 123 |
| Food/Groceries/Meals | Monthly | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 |
| Gas | Monthly | $ 422 | $ 422 | $ 422 | $ 422 | $ 422 |
| Home Maintenance | Monthly | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 |
| Healthcare Insurance | Monthly | $ 665 | $ 665 | $ 665 | $ 665 | $ 665 |
| Ally Financial Services | Monthly | $ 908 | $ 908 | $ 908 | $ 908 | $ 908 |
| Personal Care | Monthly | $ 167 | $ 167 | $ 167 | $ 167 | $ 167 |
| Cash | Monthly | $ 444 | $ 444 | $ 444 | $ 444 | $ 444 |
| Entertainment | Monthly | $ 167 | $ 167 | $ 167 | $ 167 | $ 167 |
| Drycleaning | Monthly | $ 144 | $ 144 | $ 144 | $ 144 | $ 144 |
| Clothing | Monthly | $ 316 | $ 316 | $ 316 | $ 316 | $ 316 |
| Monthly Income | | 16325 | 16325 | 16325 | 16325 | 16325 |
| **Total Monthly Expenses** | | **$ 14,914** | **$ 14,914** | **$ 14,914** | **$ 14,914** | **$ 14,914** |
| Unsecured Creditor Payment | | $ 1,412 | $ 1,412 | $ 1,412 | $ 1,412 | $ 1,412 |
| **Total   Quarterly** | | | | **$ 4,236** | | |

| June | | July | | August | | September | | October | | November | | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 |
| $ | 294 | $ | 294 | $ | 294 | $ | 294 | $ | 294 | $ | 294 | $ | 294 |
| $ | 156 | $ | 156 | $ | 156 | $ | 156 | $ | 156 | $ | 156 | $ | 156 |
| $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 |
| $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 |
| $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 |
| $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 |
| $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 |
| $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 |
| $ | 50 | $ | 50 | $ | 50 | $ | 50 | $ | 50 | $ | 50 | $ | 50 |
| $ | 361 | $ | 361 | $ | 361 | $ | 361 | $ | 361 | $ | 361 | $ | 361 |
| $ | 233 | $ | 233 | $ | 233 | $ | 233 | $ | 233 | $ | 233 | $ | 233 |
| $ | 311 | $ | 311 | $ | 311 | $ | 311 | $ | 311 | $ | 311 | $ | 311 |
| $ | 533 | $ | 533 | $ | 533 | $ | 533 | $ | 533 | $ | 533 | $ | 533 |
| $ | 811 | $ | 811 | $ | 811 | $ | 811 | $ | 811 | $ | 811 | $ | 811 |
| $ | 123 | $ | 123 | $ | 123 | $ | 123 | $ | 123 | $ | 123 | $ | 123 |
| $ | 1,100 | $ | 1,100 | $ | 1,100 | $ | 1,100 | $ | 1,100 | $ | 1,100 | $ | 1,100 |
| $ | 422 | $ | 422 | $ | 422 | $ | 422 | $ | 422 | $ | 422 | $ | 422 |
| $ | 200 | $ | 200 | $ | 200 | $ | 200 | $ | 200 | $ | 200 | $ | 200 |
| $ | 665 | $ | 665 | $ | 665 | $ | 665 | $ | 665 | $ | 665 | $ | 665 |
| $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 |
| $ | 167 | $ | 167 | $ | 167 | $ | 167 | $ | 167 | $ | 167 | $ | 167 |
| $ | 444 | $ | 444 | $ | 444 | $ | 444 | $ | 444 | $ | 444 | $ | 444 |
| $ | 167 | $ | 167 | $ | 167 | $ | 167 | $ | 167 | $ | 167 | $ | 167 |
| $ | 144 | $ | 144 | $ | 144 | $ | 144 | $ | 144 | $ | 144 | $ | 144 |
| $ | 316 | $ | 316 | $ | 316 | $ | 316 | $ | 316 | $ | 316 | $ | 316 |
| | 16325 | | 16325 | | 16325 | | 16325 | | 16325 | | 16325 | | 16325 |
| $ | **14,914** | $ | **14,914** | $ | **14,914** | $ | **14,914** | $ | **14,914** | $ | **14,914** | $ | **14,914** |
| $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 |
| $ | **4,236** | | | | | $ | **4,236** | | | | | $ | **4,236** |

2014 Mount Monthly Expenses

| | | January | February | March | April | May |
|---|---|---|---|---|---|---|
| Chase Home Mortgage | Monthly | $ 5,190.00 | $ 5,190 | $ 5,190 | $ 5,190 | $ 5,190 |
| Cell Phones | Monthly | $ 310 | $ 310 | $ 310 | $ 310 | $ 310 |
| Cable | Monthly | $ 164 | $ 164 | $ 164 | $ 164 | $ 164 |
| School Activities | Monthly | $ 275 | $ 275 | $ 275 | $ 275 | $ 275 |
| Medical/Dental Co Pay | Monthly | $ 160 | $ 160 | $ 160 | $ 160 | $ 160 |
| Prescriptions | Monthly | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 |
| Fitness Center | Monthly | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 |
| Audi Financial Services | Monthly | $ 742 | $ 742 | $ 742 | $ 742 | $ 742 |
| Chase Home Equity | Monthly | $ 945 | $ 945 | $ 945 | $ 945 | $ 945 |
| Home Phone/Internet | Monthly | $ 53 | $ 53 | $ 53 | $ 53 | $ 53 |
| Electricity | Monthly | $ 380 | $ 380 | $ 380 | $ 380 | $ 380 |
| Water/Sewer/Gas | Monthly | $ 245 | $ 245 | $ 245 | $ 245 | $ 245 |
| HOA Dues-HRCA | Monthly | $ 327 | $ 327 | $ 327 | $ 327 | $ 327 |
| Homeowners/Auto Insuranc | Monthly | $ 561 | $ 561 | $ 561 | $ 561 | $ 561 |
| Property Taxes | Monthly | $ 853 | $ 853 | $ 853 | $ 853 | $ 853 |
| Pet Care | Monthly | $ 129 | $ 129 | $ 129 | $ 129 | $ 129 |
| Food/Groceries/Meals | Monthly | $ 1,138 | $ 1,138 | $ 1,138 | $ 1,138 | $ 1,138 |
| Gas | Monthly | $ 444 | $ 444 | $ 444 | $ 444 | $ 444 |
| Home Maintenance | Monthly | $ 210 | $ 210 | $ 210 | $ 210 | $ 210 |
| Heatlhcare Insurance | Monthly | $ 665 | $ 665 | $ 665 | $ 665 | $ 665 |
| Ally Financial Services | Monthly | $ 908 | $ 908 | $ 908 | $ 908 | $ 908 |
| Personal Care | Monthly | $ 175 | $ 175 | $ 175 | $ 175 | $ 175 |
| Cash | Monthly | $ 467 | $ 467 | $ 467 | $ 467 | $ 467 |
| Entertainment | Monthly | $ 175 | $ 175 | $ 175 | $ 175 | $ 175 |
| Drycleaning | Monthly | $ 152 | $ 152 | $ 152 | $ 152 | $ 152 |
| Clothing | Monthly | $ 377 | $ 377 | $ 377 | $ 377 | $ 377 |
| Monthly Income | | 16652 | 16652 | 16652 | 16652 | 16652 |
| **Total Monthly Expenses** | | $ 15,240 | $ 15,240 | $ 15,240 | $ 15,240 | $ 15,240 |
| Unsecured Creditor Payment | | $ 1,412 | $ 1,412 | $ 1,412 | $ 1,412 | $ 1,412 |
| **Total  Quarterly** | | | | $ 4,236 | | |

| | June | | July | | August | | September | | October | | November | | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 |
| $ | 310 | $ | 310 | $ | 310 | $ | 310 | $ | 310 | $ | 310 | $ | 310 |
| $ | 164 | $ | 164 | $ | 164 | $ | 164 | $ | 164 | $ | 164 | $ | 164 |
| $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 |
| $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 |
| $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 |
| $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 |
| $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 |
| $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 |
| $ | 53 | $ | 53 | $ | 53 | $ | 53 | $ | 53 | $ | 53 | $ | 53 |
| $ | 380 | $ | 380 | $ | 380 | $ | 380 | $ | 380 | $ | 380 | $ | 380 |
| $ | 245 | $ | 245 | $ | 245 | $ | 245 | $ | 245 | $ | 245 | $ | 245 |
| $ | 327 | $ | 327 | $ | 327 | $ | 327 | $ | 327 | $ | 327 | $ | 327 |
| $ | 561 | $ | 561 | $ | 561 | $ | 561 | $ | 561 | $ | 561 | $ | 561 |
| $ | 853 | $ | 853 | $ | 853 | $ | 853 | $ | 853 | $ | 853 | $ | 853 |
| $ | 129 | $ | 129 | $ | 129 | $ | 129 | $ | 129 | $ | 129 | $ | 129 |
| $ | 1,138 | $ | 1,138 | $ | 1,138 | $ | 1,138 | $ | 1,138 | $ | 1,138 | $ | 1,138 |
| $ | 444 | $ | 444 | $ | 444 | $ | 444 | $ | 444 | $ | 444 | $ | 444 |
| $ | 210 | $ | 210 | $ | 210 | $ | 210 | $ | 210 | $ | 210 | $ | 210 |
| $ | 665 | $ | 665 | $ | 665 | $ | 665 | $ | 665 | $ | 665 | $ | 665 |
| $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 |
| $ | 175 | $ | 175 | $ | 175 | $ | 175 | $ | 175 | $ | 175 | $ | 175 |
| $ | 467 | $ | 467 | $ | 467 | $ | 467 | $ | 467 | $ | 467 | $ | 467 |
| $ | 175 | $ | 175 | $ | 175 | $ | 175 | $ | 175 | $ | 175 | $ | 175 |
| $ | 152 | $ | 152 | $ | 152 | $ | 152 | $ | 152 | $ | 152 | $ | 152 |
| $ | 377 | $ | 377 | $ | 377 | $ | 377 | $ | 377 | $ | 377 | $ | 377 |
| | 16652 | | 16652 | | 16652 | | 16652 | | 16652 | | 16652 | | 16652 |
| **$** | **15,240** | **$** | **15,240** | **$** | **15,240** | **$** | **15,240** | **$** | **15,240** | **$** | **15,240** | **$** | **15,240** |
| $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 |
| **$** | **4,236** | | | | | **$** | **4,236** | | | | | **$** | **4,236** |

2015 Mount Monthly Expenses

| | | January | February | March | April | May |
|---|---|---|---|---|---|---|
| Chase Home Mortgage | Monthly | $ 5,190.00 | $ 5,190 | $ 5,190 | $ 5,190 | $ 5,190 |
| Cell Phones | Monthly | $ 293 | $ 293 | $ 293 | $ 293 | $ 293 |
| Cable | Monthly | $ 170 | $ 170 | $ 170 | $ 170 | $ 170 |
| School Activities | Monthly | $ 275 | $ 275 | $ 275 | $ 275 | $ 275 |
| Medical/Dental Co Pay | Monthly | $ 160 | $ 160 | $ 160 | $ 160 | $ 160 |
| Prescriptions | Monthly | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 |
| Fitness Center | Monthly | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 |
| Audi Financial Services | Monthly | $ 742 | $ 742 | $ 742 | $ 742 | $ 742 |
| Chase Home Equity | Monthly | $ 945 | $ 945 | $ 945 | $ 945 | $ 945 |
| Home Phone/Internet | Monthly | $ 55 | $ 55 | $ 55 | $ 55 | $ 55 |
| Electricity | Monthly | $ 399 | $ 399 | $ 399 | $ 399 | $ 399 |
| Water/Sewer/Gas | Monthly | $ 258 | $ 258 | $ 258 | $ 258 | $ 258 |
| HOA Dues-HRCA | Monthly | $ 343 | $ 343 | $ 343 | $ 343 | $ 343 |
| Homeowners/Auto Insuranc | Monthly | $ 589 | $ 589 | $ 589 | $ 589 | $ 589 |
| Property Taxes | Monthly | $ 896 | $ 896 | $ 896 | $ 896 | $ 896 |
| Pet Care | Monthly | $ 135 | $ 135 | $ 135 | $ 135 | $ 135 |
| Food/Groceries/Meals | Monthly | $ 1,140 | $ 1,140 | $ 1,140 | $ 1,140 | $ 1,140 |
| Gas | Monthly | $ 466 | $ 466 | $ 466 | $ 466 | $ 466 |
| Home Maintenance | Monthly | $ 210 | $ 210 | $ 210 | $ 210 | $ 210 |
| Heatlhcare Insurance | Monthly | $ 665 | $ 665 | $ 665 | $ 665 | $ 665 |
| Ally Financial Services | Monthly | $ 908 | $ 908 | $ 908 | $ 908 | $ 908 |
| Personal Care | Monthly | $ 184 | $ 184 | $ 184 | $ 184 | $ 184 |
| Cash | Monthly | $ 635 | $ 635 | $ 635 | $ 635 | $ 635 |
| Entertainment | Monthly | $ 184 | $ 184 | $ 184 | $ 184 | $ 184 |
| Drycleaning | Monthly | $ 159 | $ 159 | $ 159 | $ 159 | $ 159 |
| Clothing | Monthly | $ 377 | $ 377 | $ 377 | $ 377 | $ 377 |
| Monthly Income | | 16985 | 16985 | 16985 | 16985 | 16985 |
| **Total Monthly Expenses** | | **$ 15,573** | **$ 15,573** | **$ 15,573** | **$ 15,573** | **$ 15,573** |
| Unsecured Creditor Payment | | $ 1,412 | $ 1,412 | $ 1,412 | $ 1,412 | $ 1,412 |
| **Total  Quarterly** | | | | $ 4,236 | | |

| | June | | July | | August | | September | | October | | November | | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 |
| $ | 293 | $ | 293 | $ | 293 | $ | 293 | $ | 293 | $ | 293 | $ | 293 |
| $ | 170 | $ | 170 | $ | 170 | $ | 170 | $ | 170 | $ | 170 | $ | 170 |
| $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 |
| $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 |
| $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 |
| $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 |
| $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 |
| $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 |
| $ | 55 | $ | 55 | $ | 55 | $ | 55 | $ | 55 | $ | 55 | $ | 55 |
| $ | 399 | $ | 399 | $ | 399 | $ | 399 | $ | 399 | $ | 399 | $ | 399 |
| $ | 258 | $ | 258 | $ | 258 | $ | 258 | $ | 258 | $ | 258 | $ | 258 |
| $ | 343 | $ | 343 | $ | 343 | $ | 343 | $ | 343 | $ | 343 | $ | 343 |
| $ | 589 | $ | 589 | $ | 589 | $ | 589 | $ | 589 | $ | 589 | $ | 589 |
| $ | 896 | $ | 896 | $ | 896 | $ | 896 | $ | 896 | $ | 896 | $ | 896 |
| $ | 135 | $ | 135 | $ | 135 | $ | 135 | $ | 135 | $ | 135 | $ | 135 |
| $ | 1,140 | $ | 1,140 | $ | 1,140 | $ | 1,140 | $ | 1,140 | $ | 1,140 | $ | 1,140 |
| $ | 466 | $ | 466 | $ | 466 | $ | 466 | $ | 466 | $ | 466 | $ | 466 |
| $ | 210 | $ | 210 | $ | 210 | $ | 210 | $ | 210 | $ | 210 | $ | 210 |
| $ | 665 | $ | 665 | $ | 665 | $ | 665 | $ | 665 | $ | 665 | $ | 665 |
| $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 |
| $ | 184 | $ | 184 | $ | 184 | $ | 184 | $ | 184 | $ | 184 | $ | 184 |
| $ | 635 | $ | 635 | $ | 635 | $ | 635 | $ | 635 | $ | 635 | $ | 635 |
| $ | 184 | $ | 184 | $ | 184 | $ | 184 | $ | 184 | $ | 184 | $ | 184 |
| $ | 159 | $ | 159 | $ | 159 | $ | 159 | $ | 159 | $ | 159 | $ | 159 |
| $ | 377 | $ | 377 | $ | 377 | $ | 377 | $ | 377 | $ | 377 | $ | 377 |
| | 16985 | | 16985 | | 16985 | | 16985 | | 16985 | | 16985 | | 16985 |
| $ | **15,573** | $ | **15,573** | $ | **15,573** | $ | **15,573** | $ | **15,573** | $ | **15,573** | $ | **15,573** |
| $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 |
| $ | **4,236** | | | | | $ | **4,236** | | | | | $ | **4,236** |

2016p Mount Monthly Expenses

| | | | January | | February | | March | | April | | May |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Chase Home Mortgage | Monthly | $ | 5,190.00 | $ | 5,190 | $ | 5,190 | $ | 5,190 | $ | 5,190 |
| Cell Phones | Monthly | $ | 307 | $ | 307 | $ | 307 | $ | 307 | $ | 307 |
| Cable | Monthly | $ | 178 | $ | 178 | $ | 178 | $ | 178 | $ | 178 |
| School Activities | Monthly | $ | 275 | $ | 275 | $ | 275 | $ | 275 | $ | 275 |
| Medical/Dental Co Pay | Monthly | $ | 160 | $ | 160 | $ | 160 | $ | 160 | $ | 160 |
| Prescriptions | Monthly | $ | 45 | $ | 45 | $ | 45 | $ | 45 | $ | 45 |
| Fitness Center | Monthly | $ | 150 | $ | 150 | $ | 150 | $ | 150 | $ | 150 |
| Audi Financial Services | Monthly | $ | 742 | $ | 742 | $ | 742 | $ | 742 | $ | 742 |
| Chase Home Equity | Monthly | $ | 945 | $ | 945 | $ | 945 | $ | 945 | $ | 945 |
| Home Phone/Internet | Monthly | $ | 58 | $ | 58 | $ | 58 | $ | 58 | $ | 58 |
| Electricity | Monthly | $ | 418 | $ | 418 | $ | 418 | $ | 418 | $ | 418 |
| Water/Sewer/Gas | Monthly | $ | 270 | $ | 270 | $ | 270 | $ | 270 | $ | 270 |
| HOA Dues-HRCA | Monthly | $ | 360 | $ | 360 | $ | 360 | $ | 360 | $ | 360 |
| Homeowners/Auto Insuranc | Monthly | $ | 617 | $ | 617 | $ | 617 | $ | 617 | $ | 617 |
| Property Taxes | Monthly | $ | 939 | $ | 939 | $ | 939 | $ | 939 | $ | 939 |
| Pet Care | Monthly | $ | 142 | $ | 142 | $ | 142 | $ | 142 | $ | 142 |
| Food/Groceries/Meals | Monthly | $ | 1,175 | $ | 1,175 | $ | 1,175 | $ | 1,175 | $ | 1,175 |
| Gas | Monthly | $ | 489 | $ | 489 | $ | 489 | $ | 489 | $ | 489 |
| Home Maintenance | Monthly | $ | 240 | $ | 240 | $ | 240 | $ | 240 | $ | 240 |
| Heatlhcare Insurance | Monthly | $ | 698 | $ | 698 | $ | 698 | $ | 698 | $ | 698 |
| Ally Financial Services | Monthly | $ | 908 | $ | 908 | $ | 908 | $ | 908 | $ | 908 |
| Personal Care | Monthly | $ | 193 | $ | 193 | $ | 193 | $ | 193 | $ | 193 |
| Cash | Monthly | $ | 650 | $ | 650 | $ | 650 | $ | 650 | $ | 650 |
| Entertainment | Monthly | $ | 193 | $ | 193 | $ | 193 | $ | 193 | $ | 193 |
| Drycleaning | Monthly | $ | 167 | $ | 167 | $ | 167 | $ | 167 | $ | 167 |
| Clothing | Monthly | $ | 403 | $ | 403 | $ | 403 | $ | 403 | $ | 403 |
| Monthly Income | | | 17325 | | 17325 | | 17325 | | 17325 | | 17325 |
| **Total Monthly Expenses** | | $ | **15,913** | $ | **15,913** | $ | **15,913** | $ | **15,913** | $ | **15,913** |
| Unsecured Creditor Payment | | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 | $ | 1,412 |
| **Total  Quarterly** | | | | | | $ | **4,236** | | | | |

| June | July | August |
|---|---|---|
| $ 5,190 | $ 5,190 | $ 5,190 |
| $ 307 | $ 307 | $ 307 |
| $ 178 | $ 178 | $ 178 |
| $ 275 | $ 275 | $ 275 |
| $ 160 | $ 160 | $ 160 |
| $ 45 | $ 45 | $ 45 |
| $ 150 | $ 150 | $ 150 |
| $ 742 | $ 742 | $ 742 |
| $ 945 | $ 945 | $ 945 |
| $ 58 | $ 58 | $ 58 |
| $ 418 | $ 418 | $ 418 |
| $ 270 | $ 270 | $ 270 |
| $ 360 | $ 360 | $ 360 |
| $ 617 | $ 617 | $ 617 |
| $ 939 | $ 939 | $ 939 |
| $ 142 | $ 142 | $ 142 |
| $ 1,175 | $ 1,175 | $ 1,175 |
| $ 489 | $ 489 | $ 489 |
| $ 240 | $ 240 | $ 240 |
| $ 698 | $ 698 | $ 698 |
| $ 908 | $ 908 | $ 908 |
| $ 193 | $ 193 | $ 193 |
| $ 650 | $ 650 | $ 650 |
| $ 193 | $ 193 | $ 193 |
| $ 167 | $ 167 | $ 167 |
| $ 403 | $ 403 | $ 403 |
| 17325 | 17325 | 17325 |
| **$ 15,913** | **$ 15,913** | **$ 15,913** |
| $ 1,412 | $ 1,412 | $ 1,412 |
| **$ 4,236** | | $ 8,472 |

4:37 PM
03/16/11
Accrual Basis

## coolhausWORKS, LLC
## Profit & Loss Detail
## January 27 through February 28, 2011

| Type | Date | Num | Name | Memo | Class | Clr | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | |
| **Expense** | | | | | | | | | |
| **62500 · Dues and Subscriptions** | | | | | | | | | |
| Bill | 2/22/2011 | | LinkedIn | Recruiting To... | | | 20000 Accou... | 49.95 | 49.95 |
| **Total 62500 · Dues and Subscriptions** | | | | | | | | 49.95 | 49.95 |
| **64900 · Office Expense** | | | | | | | | | |
| Bill | 2/7/2011 | | Office Max | | | | 20000 Accou... | 60.92 | 60.92 |
| **Total 64900 · Office Expense** | | | | | | | | 60.92 | 60.92 |
| **66600 · Printing and Reproduction** | | | | | | | | | |
| Bill | 2/8/2011 | | Harland & Clarke | Business Ch... | | | 20000 Accou... | 25.40 | 25.40 |
| **Total 66600 · Printing and Reproduction** | | | | | | | | 25.40 | 25.40 |
| **Total Expense** | | | | | | | | 136.27 | 136.27 |
| **Net Ordinary Income** | | | | | | | | -136.27 | -136.27 |
| **Net Income** | | | | | | | | -136.27 | -136.27 |

Exhibit C

Exhibit E

1:11 PM

05/23/11

Cash Basis

# coolhausWORKS, LLC
# Profit & Loss
### March 2011

|  | Mar 11 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Expense** | |
| 61100 · Memberships/Seminars/Training | 25.00 |
| 62600 · Dues and Subscriptions | 49.95 |
| 63300 · Insurance Expense | |
| 63310 · General Liability Insurance | 698.00 |
| **Total 63300 · Insurance Expense** | 698.00 |
| 64900 · Office Expense | |
| 64910 · Parking | 9.00 |
| 64900 · Office Expense - Other | 181.33 |
| **Total 64900 · Office Expense** | 190.33 |
| 66000 · Payroll Expenses | |
| 66100 · Worker's Compensation | 25.41 |
| **Total 66000 · Payroll Expenses** | 25.41 |
| 66500 · Postage and Delivery | 24.06 |
| 66700 · Professional Fees | |
| 66730 · Data Base (Win Search) | 150.00 |
| **Total 66700 · Professional Fees** | 150.00 |
| 68100 · Telephone Expense | |
| 68110 · Cell Phones | 112.44 |
| **Total 68100 · Telephone Expense** | 112.44 |
| 68400 · Travel Expense | 279.40 |
| **Total Expense** | 1,554.59 |
| **Net Ordinary Income** | -1,554.59 |
| **Net Income** | -1,554.59 |

4:38 PM

05/18/11

Cash Basis

# coolhausWORKS, LLC
## Profit & Loss
### April 2011

|  | Apr 11 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **47900 · Sales** | |
| Misc Income | 0.10 |
| **Total 47900 · Sales** | 0.10 |
| **Total Income** | 0.10 |
| **Gross Profit** | 0.10 |
| **Expense** | |
| 61100 · Memberships/Seminars/Training | 599.00 |
| 61700 · Computer and Internet Expenses | 25.00 |
| 62500 · Dues and Subscriptions | 49.95 |
| **63300 · Insurance Expense** | |
| 63310 · General Liability Insurance | 698.00 |
| 63320 · Life Insurance | 487.53 |
| **Total 63300 · Insurance Expense** | 1,185.53 |
| 64900 · Office Expense | 335.45 |
| **66700 · Professional Fees** | |
| 66730 · Data Base (Win Search) | 109.00 |
| 66700 · Professional Fees - Other | 1,750.00 |
| **Total 66700 · Professional Fees** | 1,859.00 |
| **68100 · Telephone Expense** | |
| 68110 · Cell Phones | 137.44 |
| **Total 68100 · Telephone Expense** | 137.44 |
| 68400 · Travel Expense | 222.88 |
| **Total Expense** | 4,414.25 |
| **Net Ordinary Income** | -4,414.15 |
| **Net Income** | -4,414.15 |

## LIQUIDATION ANALYSIS

**Professional Search:**

| | |
|---|---|
| Cash | $6,404 |
| Lease Deposit | $3,178 |
| Office equipment, furnishings | $ 2,000 |
| Total: | $11,582 |

| | |
|---|---|
| Less Chase secured claim: | ($731,342.74) |

| | |
|---|---|
| Liquidation Value for Class 3 General unsecured creditors: | $0 |

**Mount:**

| | |
|---|---|
| Residence | $1,260,245 |
| Less   secured claims: | ($1,188,330) |
| Cost of sale 15%: | ($189,036) |
| Exemption: | ($60,000) |
| Liquidation value | $0 |

| | |
|---|---|
| Cash | $5,154 |

| | |
|---|---|
| Household goods and furnishings | $3,950 |
| Exemption | ($3,950) |
| Liquidation Value | $0 |

| | |
|---|---|
| Books/Pictures/Other Collectables | $150 |
| Exemption | ($150) |
| Liquidation Value | $0 |

| | |
|---|---|
| Clothes | $475 |
| Exemption | ($475) |
| Liquidation Value | $0 |

| | |
|---|---|
| Jewelry | $450 |
| Exemption | (450) |
| Liquidation Value | $0 |

**EXHIBIT F**

| | |
|---|---|
| 2010 Audi | $24,100 |
|     Lease Payoff | ($38,389) |
|     Liquidation Value | $0 |
| | |
| 2010 Cadillac | $58,990 |
|     Secured debt | ($61,774) |
|     Liquidation Value: | $0 |
| | |
| 2010 Mercedes | $30,425 |
|     Lease payoff | ($10,606) |
|     Cost of sale 15% | ($4,563) |
|     Exemption | ($1,000) |
|     Liquidation Value | $5,256 |
| | |
| 1 Share Nissan Corp. | $20 |
|     Cost of sale | ($20) |
|     Liquidation Value | $20 |
| | |
| 100% Shares Professional Search | $0 |
| | |
| Office equipment | $1,025 |
|     Exemption | ($1,025) |
|     Liquidation Value | $0 |
| | |
|     Total: | $10,410 |

LESS:

| | |
|---|---|
| Chapter 7 trustee fee: | $1,791 |
| Chapter 7 professional fees: | $5,000 |
| Chapter 11 administrative claims: | $15,000 |
| Total available for distribution: | $0.00 |